## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMANDO TOLLIVER,<br><br>2328 N. 17th Street<br><br>Philadelphia, PA 19132<br><br>        Plaintiff,<br><br>   v.<br><br><br>THE SCHOOL DISTRICT OF PHILADELPHIA; DR. JANICE BUTLER; DR. JOHNATHAN BROWN; DR. EVELYN NUNEZ<br><br>440 N. Broad Street<br><br>Philadelphia, PA 19130<br><br>        Defendants. | **CIVIL ACTION No.**<br><br><br>**COMPLAINT**<br><br><br>Plaintiff Demands a Trial by Jury |

## COMPLAINT

Plaintiff, Armando Tolliver, by and through his attorneys, Derek Smith Law Group, PLLC as and for Plaintiff's Complaint in this action against the Defendants, (hereinafter collectively referred to as Defendants), respectfully alleges as follows upon information and belief:

## NATURE OF THE CLAIMS

This action is brought to remedy, *inter alia*, Defendants' unlawful discrimination against Dr. Armando Tolliver with respect to Plaintiff's employment on the basis of race, color, and sexual orientation, along with a hostile work environment, retaliation as a result of Plaintiff's opposition to these unlawful practices, and Defendants' wrongful termination of Plaintiff as a

result of Plaintiff's opposition to these unlawful practices. Through their unlawful and discriminatory conduct, Defendants violated 42 U.S.C § 1981, and the Pennsylvania Human Relations Act (PHRA). This case was investigated by the EEOC.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331in that the action involves federal questions, because the causes of action asserted herein arise in part under 42 U.S.C. § 1981 ("1981"), to remedy violations of the laws of of the commonwealth pursuant to the Pennsylvania Human Relations Act (PHRA) seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, retaliated against, and unlawfully terminated by Plaintiff's former employer on the basis of Plaintiff's race, color, and national origin, as well as a hostile work environment.

2. The relevant portions of this action have been administratively processed with the Philadelphia Commission on Human Relations (PCHR).

3. One year has lapsed since Plaintiffs claims were filed with the PCHR and Right to Sue Letters from the EEOC have been received thus exhausting any administrative requirements necessary to file Plaintiff's claims in court.

4. This action has been timely filed and has met all conditions precedent.

5. Venue is proper because Defendants conduct business, are or were employed in Philadelphia and the incidents comprising this Complaint occurred in Philadelphia, Pennsylvania.

## **PARTIES**

6. Plaintiff, Dr. Armando Tolliver ("Dr. Tolliver" or "Plaintiff") is an African American male who resides in the Commonwealth of Pennsylvania with an address for purposes of correspondence at 2328 N. 17 St., Philadelphia, PA 19132.

7. Defendant, The School District of Philadelphia is an academic entity under the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 440 N. Broad Street, Philadelphia, PA 19130.

8. Defendant, Dr. Janice Butler is an adult female who aided and abetted the sexual orientation and race discrimination, harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 440 N. Broad Street, Philadelphia, PA 19130.

9. Defendant, Dr. Johnathan Brown is an adult male who aided and abetted the sexual orientation and race discrimination, harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 440 N. Broad Street, Philadelphia, PA 19130.

10. Defendant, Dr. Evelyn Nunez is an adult female who aided and abetted the sexual orientation and race discrimination, harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 440 N. Broad Street, Philadelphia, PA 19130.

11. At all times relevant to this Complaint, Defendants violated Plaintiff, Dr. Armando Tolliver's rights under §1981, the Pennsylvania Human Relations Act.

12. At all times relevant to this Complaint, Defendants were Plaintiff's joint and sole employers.

13. Dr. Jamie Butler (individually), Dr. Johnathan Brown (individually), and Dr. Evelyn Nunez (individually) are identified herein as individual Defendants who aided and abetted the discrimination and harassment in the workplace, and the ongoing hostile work environment, disparate treatment and retaliation.

14. The individual Defendants all have supervisory authority over Plaintiff such that they each have the authority to subject Plaintiff to a tangible employment action by altering the terms and conditions of Plaintiff's employment.


**STATEMENT OF FACTS**

15. On July 11, 2022, Plaintiff, Dr. Tolliver filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants due to discrimination and harassment in the workplace based upon Plaintiff's membership in a protected class based upon race and sexual orientation.

16. Plaintiff's Charge was also subject to retaliation in response to Plaintiff engaging in protected activity by opposing and reporting the sexual orientation and race. discrimination, multiple times including in writing, verbally, and through reports to his employer and the EEOC.

17. Plaintiff submits this Complaint in response to Defendants discrimination, harassment, hostile work environment and retaliation.

18. Plaintiff was first hired sometime around August 2010 as a teacher for the School District of Philadelphia.

19. Plaintiff was promoted to Assistant Principal in or around 2018 for the School District of Philadelphia.

20. In or around August 2020, Plaintiff, Dr. Armando Tolliver began his employment with Defendants as a Teacher.

21. At all times relevant to this employment, Plaintiff has executed the responsibilities of his employment with excellence, diligence, and satisfied the job requirements his position entailed.

22. Notwithstanding Plaintiff has been subjected to severe and pervasive discrimination and harassment in the workplace due to his race and sexual orientation.

23. Plaintiff has also been subjected to multiple adverse employment actions by Defendants as part of a campaign of discrimination and retaliation.

24. At times relevant to this Charge, Plaintiff, Dr. Tolliver was assigned to work at Thomas Alva Edison High School, located at 151 W Luzerne St, Philadelphia, PA 19140.

25. Beginning October 2021, Defendant, Dr. Jamie Butler, Defendant, Dr. Johnathan Brown, and Defendant, Dr. Evelyn Nunez (individually), began to subject Plaintiff, Dr. Armando Tolliver, to severe and pervasive discrimination and harassment due to his race and sexual orientation.

26. By way of example, but by no means an exhaustive list, Defendants have subjected Plaintiff to multiple adverse employment actions, designed to interfere with Plaintiff's work environment and aimed toward treating Plaintiff in an abusive, discriminatory manner based upon his race and sexual orientation

27. Defendants changed Plaintiff, Dr. Tolliver's status from permanent placement to a displaced employee.

28. Plaintiff is not only displaced but maintains an ongoing displaced status.

29. This status was intentionally assigned to Plaintiff as part of a campaign of discrimination and retaliation and has interfered with Plaintiff's ability to perform his job, and to achieve fulltime placement.

30. Another name for this displace status is over appointment.

31. Plaintiff, Dr. Tolliver is an over appointment. This is based upon the pretext that his salary is not in the school's budget. This is pretext because this status only occurred after Plaintiff engaged in protected activity and Defendants initiated a campaign to eject Plaintiff from his employment.

32. This means that Plaintiff, Dr. Tolliver does not have a job.

33. All of Plaintiff, Dr. Tolliver's belongings are in storage because Plaintiff will not be at his current school by the end of the year.

34. This was the intention when Defendants subjected Plaintiff to this change in the terms and conditions of Plaintiff's employment.

35. Plaintiff has been placed Roxboro High School, currently, which had three (3) Assistant Principals ("APs") and one (1) Principal.

36. Currently, the school now has four (4) APs and one (1) Principal.

37. Central High School has a vacancy however, Defendants did not permit Plaintiff, Dr. Tolliver to interview at Central High School.

38. This is because Defendants intentionally pulled, Plaintiff, Dr. Tolliver's name off the list, which resulted in further adverse employment action and retaliation.

39. Defendants are treating, Plaintiff Dr. Tolliver an employee who quit his job, in retaliation for Plaintiff reporting discrimination and harassment in the workplace due to his race and sexual orientation

40. Plaintiff, Dr. Tolliver should be simply reassigned a position, however due to his status as an "over appointment", Plaintiff is forced to apply for jobs on a continuous basis just to remain employed.

41. This status was a direct result of Plaintiff reporting discrimination and harassment in the workplace.

42. But for Plaintiff's reports of discrimination and harassment in the workplace, Plaintiff's status would not have changed and Plaintiff would not be displaced.

43. On July 3, 2022, Plaintiff learned that Defendants had removed his from the Eligibility list.

44. On July 5, 2022, Defendants put Plaintiff back onto the list only after Plaintiff complained about being improperly removed from the Eligibility List.

45. Plaintiff learned that Defendants did not put his on the Eligibility list.

46. Plaintiff should have been placed on the eligibility list immediately, but he was not placed on the list until May 6, 2022.

47. Therefore, individuals who were not employees of the school district were treated better than Plaintiff and given preferential treatment over Plaintiff.

48. The direct reason for Plaintiff being treated this way was due to Plaintiff reporting and opposing discriminatory conduct.

49. Defendants specially responded to reports of and opposition to discrimination by subjecting Plaintiff to adverse employment actions.

50. Defendants have withdrawn Plaintiff, Dr. Tolliver's applications for employment without notice or consent of Plaintiff, in further efforts to subject Plaintiff to discrimination and retaliation.

51. Defendant Butler, at the orders of Defendant Dr. Brown, removed Plaintiff from his office, and placed Plaintiff in the hallway for students to pass by and ridicule.

52. Defendants intentionally subjected Plaintiff to adverse employment action by taking Plaintiff's office and ordering Plaintiff to work at a student's desk in the hallway.

53. This put Plaintiff on display as an example of what happens to someone who dares to report and oppose discrimination and harassment in the workplace.

54. Students took pictures of Plaintiff and laughed at Plaintiff as Plaintiff was the only principal or vice principal who was singled out and subjected to this kind of abusive, embarrassing, ridiculing conduct.

55. Plaintiff was forced to continue working from a high school student's desk, in the hallway, surrounded by students.

56. When Plaintiff asked Defendant Butler why Plaintiff was placed in the hallway, Defendant Butler responded that was "following orders".

57. The orders came from Defendants as part of a campaign of discrimination and retaliation.

58. There was no other employee who could have issued "orders" for Plaintiff to be ejected from his office and placed in the hallway like a student in detention, other than Defendant Brown.

59. Further, Defendants gave the administrative staff deployment tasks.

60. Plaintiff, Dr. Tolliver's deployment was materially different than all of the other administrators.

61. These deployment tasks were part of the campaign of discrimination and retaliation to which Plaintiff was subjected by Defendants including the individually named Defendants, above.

62. Plaintiff, Dr. Tolliver was enrolled in a digital course for the PA Inspired Leadership Program.

63. Within the first five (5) years of the role as Principal or Assistant Principal, Plaintiff was required to enroll in this course in order to keep his teaching license.

64. Defendant Brown reversed a previously agreed upon decision and would not permit Plaintiff to attend the digital course, and stated that Plaintiff, Dr. Tolliver could not attend the course.

65. Defendant Brown intentionally lied in order to deny Plaintiff the ability to take this required course.

66. At the time, Defendant Brown had just started his employment at the school and Plaintiff had been registered for the course for years.

67. Plaintiff had already received permission to attend the course prior to Defendant Brown's employment.

68. This course was a requirement for Plaintiff to maintain his teaching license.

69. Despite knowledge of same, Defendants took overt action against Plaintiff and attempted to remove Plaintiff from the course, so as to deny Plaintiff the ability to earn credits required to maintain his license.

70. Plaintiff received an email from one of the course organizers that an individual had contacted their office and tried to have Plaintiff removed from the course.

71. Plaintiff was able to rectify the situation and take the course.

72. If Plaintiff had not taken the course he would have lost his Principal licensure.

73. To date Defendants continue to subject Plaintiff to severe and pervasive discrimination, harassment, and retaliation for engaging in protected activity.

74. There is nothing in Plaintiff's employment file related to discipline or violation of policy.

75. The three primary individuals who have subjected Plaintiff to discrimination and harassment in the workplace are Dr. Janice Butler – Guest Principle, Dr. Johnathan Brown- Assistance Superintendent, and Dr. Evelyn Nunez who is the Chief of Schools.

76. Defendant, Brown who is the worst offender who continuously subjected Plaintiff to discrimination and harassment in the workplace between October 2021 through June 2022.

77. The discrimination and harassment in the workplace is ongoing.

78. Defendant, Nunez controls whether there will be placement in another position which essentially equates to having a job. Defendant Nunez uses this authority to subject Plaintiff to adverse employment actions and deny Plaintiff the ability to work as a fulltime, permanent employee.

79. Defendants received Plaintiff's originally filed Charge of Discrimination sometime around June 11, 2022.

80. Plaintiff was relocated as part of a campaign of discrimination and retaliation.

81. Plaintiff was informed the relocation was temporary and that because of the relocation, Plaintiff would have to look for another job for the following school year.

82. Accordingly, Plaintiff was specially subjected to adverse employment action due to discrimination and retaliation.

83. Defendants prevented Plaintiff from obtaining permanent placement by interfering with the eligibility list.

84. Because of his reports of discrimination, Plaintiff is in a position where Plaintiff has to find a new job every year.

85. Many other employees who did not even have a position to begin with were given preferential treatment over Plaintiff. This is another example of adverse employment action.

86. Sometime around May 6, 2022, Plaintiff went from being the Assistant Principal at Thomas Jefferson to a temp at Roxboro.

87. March 2022, Plaintiff experienced physical symptoms due to the hostile work environment.

88. From October 2021 through June 2022, Defendants worked to punish Plaintiff and subject Plaintiff to an abusive work environment due to his race and sexual orientation and as part of a campaign of retaliation.

89. Defendant, Butler began the week of November 8, 2021. By the weekend Defendant, Butler decided Plaintiff had to work from the second floor with no office.

90. Defendants' excuse was that there was a Charge that she was given to force Plaintiff to work without an office, at a high school student's desk, on the second floor.

91. None of the other Assistant Principals were affected by this Charge that landed Dr. Tolliver in the second-floor hallway.

92. Dr. Tolliver had an office on the first floor, before she was asked to move and was directed to relocate to the second floor.

93. Assistant Principal Dr. Dinkins was given an office on the third floor.

94. Assistant Principal Mr. Fray already was given an office on the second floor.

95. Dr. Tolliver was not provided with an office and was forced to work in the hallway in front of all the students.

96. Dr. Tolliver was ordered to move out of his office and work from the second floor with no office.

97. .Dr. Tolliver was forced out of his office to the hallway so that Dr. Tolliver  had to conduct all business without any office – this occurred on November 12, 2021.

98. Also on November 12, 2021 – Dr. Tolliver was instructed to begin suspending students without any support through the school code of conduct.

99. Dr. Tolliver emailed concerns about this sudden directive, that this would lead to disparate impact upon certain students in certain protected groups.

100. Defendants instructed Dr. Tolliver to suspend students without any support in the code of conduct.

101. This occurred also the same day Dr. Toliver was kicked out of his office.

102.  These directives came through Defendant, Butler.

103.  Following this, on December 17, 2021, Defendant, Brown scheduled a meeting called Edison Reset Planning meeting and Dr. Tolliver was not permitted to attend the meeting which was extremely disconcerting and indicated an intentional effort to exclude Dr. Tolliver from the other school administrators.

104.   December 8, 2021: Dr. Tolliver's  work duties were intentionally limited as part of the campaign of discrimination and retaliation.

105.   Dr. Tolliver was reprimanded for conducting observations and conferences instead of being in the hallway.

106.   They directed Dr. Tolliver to work in the hallway as part of the campaign of discrimination and retaliation.

107.   It was impossible for Plaintiff to fulfill the requirements of his position subject to these new directives to only work in the hallway.

108.   Classroom Observations were part of Plaintiff's job requirements.

109.   The observations required being in the classroom for a period of 90 minutes at a time.

110.   And all of Classroom Observations had to be finished before the end of the month.

111.   Accordingly conducting observations and spending time in the classroom was a job requirement.

112.   Dr. Tolliver  was reprimanded for fulfilling his job requirements.

113.   Similarly situated coworkers were not subjected to this discipline, reprimand, and changes in the terms and conditions of employment.

114.   Defendant, Butler verbally reprimanded Dr. Tolliver and subjected Dr. Tolliver to abusive orders that interfered with Plaintiff's work environment. These orders included, not permitted Dr. Tolliver to leave the hallway.

115.   Sometime around November 12, 2021: Dr. Tolliver was informed that she is now going to have assigned lunch periods.

116. This was another way in which Dr. Tolliver was singled out and treated differently than similarly situated coworkers.

117. Around December 2021: Defendant Brown begins to subject Dr. Tolliver to disciplinary action as part of the campaign of discrimination and retaliation.

118. As a disciplinary meetings that was set up, one of the other individuals present stated that this was not a disciplinary issue. This did not stop Defendants from subjecting Plaintiff to abusive conduct through false discipline.

119. Defendant Brown took exception to the attempt to cancel the disciplinary meeting that he had planned to subject Plaintiff to discrimination.

120. Currently, every year, Dr. Tolliver has to reapply for his job.

121. Dr. Tolliver today is in a completely different position because of his protected activity.

122. Because she reported discrimination in February 2022, and again in May 2022, Plaintiff was moved to the other school.

123. Plaintiff's status changed from permanent placement to a displaced employee.

124. Dr. Tolliver is not only displaced but also suffers from ongoing displaced status.

125. Dr. Tolliver is treated like an over appointment, which means that Dr. Toliver's position is not in the school's budget.

126. This means that Dr. Tolliver does not have a job.

127. All of Plaintiff's belongings are in storage because she will not be there at the end of the year.

128. Plaintiff is treated like some person who just quit his job.

129. This all started because Plaintiff reported discrimination.

130. Plaintiff should not have to apply for other jobs. Defendants should be finding ways to reassign Plaintiff.

131.  Defendant, Brown specially enforced a campaign designed to eject Plaintiff from his employment.

132. Defendants also stopped referring to Dr. Tolliver  as "Dr. Tolliver,"

133. Defendants intentionally misspell Plaintiff's name in correspondence.

134. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

135. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

136. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

137. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

138. Plaintiff has further experienced severe emotional and physical distress.

139. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

140. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

141. Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

142. Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

143. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

144. Upon information and belief, Defendants' discrimination and retaliation will continue after the date of this complaint and claimant hereby makes a claim for all continuing discrimination and retaliation.

145. Plaintiff further claims constructive and/or actual discharge to the extent she is terminated from him position as a result of the retaliation and harassment.

146. Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

147. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

148. Plaintiff was subjected to adverse employment actions including being denied pay raises and promotions, having his hours reduced and other changes to the terms and conditions of Plaintiff's employment.

149. Plaintiff declares under penalty of perjury that the above is true and correct.

150. Plaintiff swears and affirms that he has read the above Charge of Discrimination and that it is true to the best of his knowledge, information, and belief.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER 42 U.S.C. SECTION 1981**
**(AGAINST ALL NAMED DEFENDANTS)**

151. Plaintiff incorporates paragraphs 1-150 as if fully set forth herein.

152. Pursuant to 42 U.S.C. § 1981, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

153. Defendants were employers within the meaning of the above-referenced statutes.

154. Defendants, including the School District of Philadelphia (SDP), are not immune from regulations promulgated by 42 U.S.C. § 1981.

155. Plaintiff was an employee within the meaning of the above-referenced statutes.

156. Plaintiff is a member of protected classes i.e., and African American male and sexual orientation.

157. Plaintiff did not engage in any wrongful activity worthy of termination.

158. Plaintiff was denied due process on account of his race and sexual orientation.

159. Plaintiff suffered disparate treatment by Defendants on account of  his race and sexual orientation.

160. Defendant SDP is liable for violations of 42 U.S.C. § 1981.

161. Defendants Butler, Brown, Nunez, as indicated above, are also liable for violations of 42 U.S.C. § 1981.

162. As outlined above, Plaintiff was subjected to disparate treatment for his race and sexual orientation in relation to his position and job duties as a teacher.

163. Named Defendants individually, in aiding and abetting, are liable as accomplices to SDP in its discriminatory conduct in violation of 42 U.S.C. § 1981.

164. As a result of the foregoing, Plaintiff suffered damages including emotional distress, loss of income, benefits, and professional reputation.

## SECOND CAUSE OF ACTION
## DISCRIMINATION UNDER PENNSYLVANIA HUMAN RELATION ACT (PHRA)
## (AGAINST DEFENDANT SDP ONLY)

165. Plaintiff incorporates paragraphs 1-164 as if fully set forth herein.

166. The Pennsylvania Human Relation Act ("PHRA") and regulations promulgated thereafter make it an unlawful employment practice for an employer to discriminate in hiring, promotion, or retention and/or retaliate against an individual with respect to the terms and conditions or privileges of employment on the basis of race, sex and/or age.

167. Defendant is an employer within the meaning of the above-referenced statute.

168. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race, color, and national origin, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on Plaintiff's membership in the aforementioned protected classes.

169. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

170. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**THIRD CAUSE OF ACTION**
**RETALIATION UNDER PENNSYLVANIA HUMAN RELATION ACT (PHRA)**
**(AGAINST ALL DEFENDANTS)**

171. Plaintiff incorporates paragraphs 1-170 as if fully set forth herein.

172. The Pennsylvania Human Relation Act ("PHRA") and regulations promulgated thereafter make it an unlawful employment practice for an employer to discriminate in hiring, promotion, or retention and/or retaliate against an individual with respect to the terms and conditions or privileges of employment on the basis of race, sex and/or age.

173. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

174. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of the PHRA.

175. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**FOURTH CAUSE OF ACTION**
**AIDING AND ABETTING**
**UNDER PENNSYLVANIA HUMAN RELATION ACT (PHRA)**
**(AGAINST ALL NAMED DEFENDANTS)**

176. Plaintiff incorporates paragraphs 1-175 as if fully set forth herein.

177. Defendants Butler, Brown and Nunez, as indicated above, do not qualify for immunity granted by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), as is stated in § 8550, "In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused

the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply." 42 Pa.C.S. § 8550.

178. Further, PSTCA immunity of school officials is not to be applied in situations of discrimination. This is outlined in the opinion of *DiSalvio v. Lower Merion High School Dist.,* 158 F. Supp. 2d 553 (E.D. Pa. 2001), where a football coach was found to be liable for sex-based discrimination for his actions toward a female student, and a school administrator who was aware of the action was found to also be liable, despite having immunity in other situations.

179. Therefore, public school district officials are *not* entitled to qualified or absolute immunity in cases of discrimination.

180. Accordingly, in an individual and professional capacity, all named Defendants are *not* entitled to absolute immunity.

181. Defendants, The School District of Philadelphia, Dr, Janice Butler, Dr, Johnathan Brown, Dr. Evelyn Nunez are liable for aiding and abetting in Defendant SDP's discrimination and retaliation against Plaintiff.

182. Wherefore Defendants are liable.

## FIFTH  CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT
### UNDER § SECTION 1981
### (AGAINST ALL NAMED DEFENDANTS)

183. Plaintiff incorporates paragraphs 1-182 as if fully set forth herein.

184. The standards for a hostile work environment claim are identical under Title VII and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir. 2005) ("Regarding [plaintiff's hostile work environment claim, the same standard used under Title VII applies under Section 1981."); Ocasio v. Leigh Valley Family Health Center, 92 Fed. Appx 876, 879-80 (3d Cir. 2004)("As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standards as in a similar Title VII claim.").

185. While the standards of liability are identical under Title VII and Section 1981, there is a major difference in the coverage of the two provisions: under Title VII, only employers can be liable for discrimination in employment, but under Section 1981, individuals, including other employees, can be liable for racial discrimination against an employee. See Cardenas, 269 F.3d at 268; Al-Khazarji, F.2d at 518.

186. Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

187. Defendants' conduct was not welcomed by Plaintiff.

188. Defendants' conduct was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

189. Plaintiff believed his work environment was hostile and abusive as a result of Defendants' conduct.

190. As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status.

191. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

192. Defendants acted upon a continuing course of conduct.

193. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**SIXTH CAUSE OF ACTION**
**RETALIATION**
**UNDER § 1981**
**(AGAINST ALL NAMED DEFENDANTS)**

194. Plaintiff incorporates paragraphs 1-193 as if fully set forth herein.

195. The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

196. The Third Circuit has indicated that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See Cardenas, 269 F.3d at 263 ("[T]o establish a prima facie retaliation claim

under Title VII [or] § 1981 … , [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995)(noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII").

197.  The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405 (2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provisions "a Plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed;"); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United Stated Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Milner v. CIGNA Corp., 47 F,3e 58 (3d Cir. 1995).

198.  Here, Defendants discriminated against Plaintiff because of his protected activity under Section 1981.

199.  Plaintiff was acting under a reasonable, good faith belief that his, or someone else's, right to be free from discrimination on the basis of race was violated.

200.  Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

201.  There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

202.  Defendants acted upon a continuing course of conduct.

203.  Plaintiff will rely on a broad array of evidence to demonstrate a causal link between his protected activity and Defendants' actions taken against them, such as the usually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of his protected activity.

204.  As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**SEVENTH  CAUSE OF ACTION**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(AGAINST ALL NAMED DEFENDANTS)**

205.  Plaintiff incorporates paragraphs 1-204 as if fully set forth herein.

206. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "to deny or interfere with the employment opportunities of an individual based upon his or his race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

207. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's his race and sexual orientation.

208. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

## EIGHTH  CAUSE OF ACTION
## RETALIATION
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

209. Plaintiff incorporates paragraphs 1-208 as if fully set forth herein.

210. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

211. Defendant engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of their employer.

212. Defendants discriminated against Plaintiff because Plaintiff asserted his rights to a discrimination-free workplace under the PFPO.

213. Plaintiff was acting under a reasonable, good faith belief that his right to be free from discrimination on the basis of sex was violated.

214. Because Plaintiff asserted his rights under the PFPO, Defendants retaliated against him by terminating him.

215. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between his protected activity and the Defendants' actions taken against him, such as the unusually suggestive proximity in time between events.

216. As a result, Plaintiff has suffered damages.


**NINTH  CAUSE OF ACTION**
**AIDING AND ABETTING UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against all named Defendants)**


217. Plaintiff incorporates paragraphs 1-216 as if fully set forth herein.

218.  The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be

unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or

coerce the doing of any unlawful employment practice or to obstruct or prevent any person

from complying with the provisions of this Section or any order issued hereunder or to

attempt directly or indirectly to commit any act declared by this Section to be an unlawful

employment practice."

219. Defendants engaged in an unlawful discriminatory practice in violation of the Philadelphia

Fair Practice Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing

the above discriminatory, unlawful, and retaliatory conduct.

220. As a result, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff respectfully demands judgment in his favor and against

Defendants in an amount which exceeds jurisdiction and an award of the following:

a. Back pay and front pay, including benefits with pre-judgment interest;

b. Compensatory damages, consequential damages and punitive damages;

c. Non-pecuniary damages, including emotional pain and suffering, inconvenience,

mental anguish, loss of enjoyment of life and humiliation;

d. Attorney's fees and costs; and

e. Any other relief this Honorable Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

## <u>DEMAND TO PRESERVE EVIDENCE</u>

   The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his claims alleged herein, his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## <u>PRAYER FOR RELIEF</u>

   WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully submitted,
Derek Smith Law Group, PLLC.
By: _/s/ Edward McCain III_
Edward McCain III, Esquire
1628 Pine Street,
Philadelphia, PA 19103

Date: August 12, 2024

## VERIFICATION

I, **<u>Edward McCain III,</u>** hereby state:

   1.  I am the Attorney for Plaintiff in this action;

   2.  I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

   3.  I understand that the statements in said Complaint are subject to the penalties of the 28 U.S.C. §1746 relating to unsworn falsification to authorities.


<u>*/s/Edward McCain III*</u>

DATED: 08/12/2024