# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMANDO TOLLIVER | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  24-4140 |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA, DR. JANICE BUTLER, DR. JOHNATHAN BROWN, DR. EVELYN NUNEZ | : : : : | |

## MEMORANDUM

**MURPHY, J.**                                                                                         June 30, 2025

### I.   Introduction

Dr. Armando Tolliver is employed by the School District of Philadelphia, most recently as an Assistant Principal.  He alleges that the district and several of its administrators discriminated against him on the basis of sexual orientation and race.  According to Dr. Tolliver, this discrimination included removal from his office space, reassignment to lesser duties, and exclusion from meetings.  Most significantly, he was transferred from a permanent position to a temporary one, where he was reclassified as "displaced" — a designation that threatened his job security (and continues to do so today).

Dr. Tolliver filed a charge with the EEOC alleging discrimination based solely on sexual orientation.  He now asserts additional claims based on race.  Defendants moved to dismiss the complaint in its entirety.  We grant the motion in full.  Some of Dr. Tolliver's claims are barred for failure to exhaust administrative remedies, while others are dismissed because they lack sufficient factual allegations.  Nonetheless, because we do not find amendment to necessarily be futile, we grant Dr. Tolliver leave to amend his complaint once more.

**II.     Background**

Dr. Tolliver is an African American male who alleges that his employer — the School District of Philadelphia (SDP) — discriminated against him, predominantly on the basis of race and sexual orientation.  DI 8 ¶¶ 1, 6.[1]  He is suing SDP, Dr. Janice Butler, Dr. Johnathan Brown, and Dr. Evelyn Nunez for violations of 42 U.S.C. § 1981, the Pennsylvania Human Relations Act (PHRA), and the Philadelphia Fair Practices Ordinance (PFPO).  *Id.* ¶¶ 7-11.  We summarize the notable facts according to Dr. Tolliver's complaint below.

SDP hired Dr. Tolliver as a teacher in August 2010, *id.* ¶ 19, and promoted him to Assistant Principal in 2018, *id.* ¶ 20.  In October 2021, Dr. Tolliver began to face "severe and pervasive discrimination and harassment due to his race and sexual orientation."  *Id.* ¶ 25.  On November 12, 2021, Dr. Tolliver was removed from his office, forced to work in a hallway, and assigned a new lunch period — treatment different than his coworkers received.  *Id.* ¶¶ 88-96, 115-16.  Then in December 2021, Dr. Tolliver's work duties were limited, and he was not allowed to attend a meeting "which was extremely disconcerting and indicated an intentional effort to exclude Dr. Tolliver from the other school administrators."  *Id.* ¶¶ 103-04.  These incidents corresponded with Dr. Brown beginning employment.  *Id.* ¶¶ 88-117.[2]

In February 2022, Dr. Tolliver apparently reported discrimination, but we know nothing

---

[1] Dr. Tolliver also sometimes states "race, color, and national origin, [and] sexual orientation" as bases for the discrimination he alleges, DI 8 ¶ 1, but he does not include any factual allegations about national origin.

[2] Dr. Tolliver also alleges that on November 12, 2021, he was "instructed to begin suspending students without any support through the school code of conduct," which he was concerned "would lead to disparate impact upon certain students in certain protected groups." DI 8 ¶¶ 97-98.  Apparently, he was "kicked out of his office" on the same day that he reported his concerns.  *Id.* ¶ 101.  The complaint does not explain how this relates to Dr. Tolliver's discrimination claims.

2

about this report — the complaint provides no information about to whom he made the report, what the report included, or whether there was any follow-up. *Id.* ¶ 122.

On May 6, 2022, "Plaintiff went from being the Assistant Principal at Thomas Jefferson to a temp at Roxborough." *Id.* ¶ 85. On the same day, he was placed on an "eligibility list." *Id.* ¶ 45. Reading between the lines, we understand the eligibility list to include staff members eligible for hire within SDP. From what we can surmise, Dr. Tolliver's transfer to Roxborough as a temporary employee in May 2022 resulted in his employment categorization changing from "permanent" to "displaced," *id.* ¶ 27 — which also explains why he was placed on the eligibility list on the same day. According to Dr. Tolliver "[d]isplaced is considered an adverse employment action as it means that the employee changes location every year and has no advance notice of where he will be working." *Id.* In addition, Dr. Tolliver says "he was also denied the ability to apply directly to any school and had to wait until SDP determined where he could go." *Id.*

Dr. Tolliver apparently reported discrimination again in May 2022, but again the complaint lacks details. *Id.* ¶ 122. Dr. Tolliver alleges that he was generally subjected to discrimination, harassment, and an abusive work environment "due to his race and sexual orientation and as part of a campaign of retaliation" during this time, largely because of Dr. Brown. *Id.* ¶¶ 75, 87.

On July 3, 2022, Dr. Tolliver learned that his name had been removed from the eligibility list. *Id.* ¶ 43. He complained, and his name was placed back on the list on July 5, 2022. *Id.* ¶ 44.[3] On July 11, 2022,[4] Dr. Tolliver filed an EEOC charge, *id.* ¶ 15, in which he alleged

---

[3] Dr. Tolliver also states that he "should have been placed on the eligibility list

3

discrimination, harassment, and retaliation "based on sexual orientation in violation of Title VII of the Civil Rights Act of 1964," DI 10-1 at 2.[5] On July 27, 2023, the EEOC issued a right to sue letter. DI 10-3. Dr. Tolliver filed suit on August 12, 2024. DI 1. Defendants moved for dismissal, DI 5, and Dr. Tolliver amended his complaint in response, DI 8. Dr. Tolliver's amended complaint tells us that he remains on displaced status. DI 8 ¶ 28. Defendants again filed a motion to dismiss, DI 10, which is ripe for our review.

## III.   Analysis

Dr. Tolliver's amended complaint states eight causes of action: (1) discrimination under § 1981; (2) discrimination under the PHRA; (3) retaliation under the PHRA; (4) aiding and abetting under the PHRA; (5) hostile work environment under § 1981; (6) retaliation under § 1981; (7) discrimination under the PFPO; and (8) retaliation under the PFPO. DI 8 at 17-27. We group the causes of action by first discussing exhaustion, then the remaining PHRA and PFPO claims, and finally the § 1981 claims.

---

automatically, but he was not placed on the list until May 6, 2022, and then removed on July 5." DI 8 ¶ 45. Given that Dr. Tolliver became a temporary employee on May 6, 2022, *id.* ¶ 85, we do not know why he should have been on the eligibility list earlier.

[4] In paragraph 78, Dr. Tolliver says defendants received the charge on June 11, 2022. DI 8 ¶ 78. That conflicts with paragraph 15, where Dr. Tolliver says defendants received the charge on July 11, 2022. *Id.* ¶ 15. The EEOC charge submitted as an exhibit to defendants' motion is dated July 11, 2022. DI 10-1.

[5] Dr. Tolliver's complaint does not incorporate many of the factual allegations from the EEOC charge. And he did not provide us with the EEOC charge — defendants filed it as an attachment to their motion to dismiss. If Dr. Tolliver wants us to consider all the facts contained in his EEOC complaint, he should include them in his second amended complaint.
 Additionally, Dr. Tolliver's complaint states that he filed the EEOC charge "based upon [his] membership in a protected class based upon race and sexual orientation." DI 8 ¶ 15. As discussed *infra* III(A), Dr. Tolliver's EEOC charge did not reference race.

4

### A. Dr. Tolliver exhausted only his claims based on sexual orientation under PHRA and PFPO.

"Prior to seeking judicial relief under the PHRA . . ., a plaintiff must exhaust all administrative remedies." *Kopko v. Lehigh Valley Health Network*, 776 Fed. App'x 768, 773 (3d Cir. 2019) (citing *Colgan v. Fisher Sci. Co.*, 935 F.2d 1407, 1414 (3d Cir. 1991)). The same is true for PFPO claims. *Mouzone v. Univ. of Penn. Health Sys.*, No. 23-19, 2023 WL 7167565 (E.D. Pa. Oct. 31, 2023).[6] "The relevant test in determining . . . exhaust[ion of] . . . administrative remedies . . . is whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). We must assess the "gravamen" of the administrative charge and determine whether the agency was "put on notice" as to the unstated claim. *Id.* at 1296. In *Antol*, an appellant's administrative complaint exclusively alleged disability discrimination, and the agency investigated solely that issue. *Id.* at 1295. The Third Circuit held that the plaintiff's administrative complaint did not exhaust his subsequent sex discrimination claim, even though it was *possible* that the administrative investigation could have revealed sex discrimination. *Id.* at 1295-96. The purpose of administrative exhaustion is "to afford the [agency] the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court," and the agency cannot do that when not put on notice. *Id.* at 1295-96.

Similarly, Dr. Tolliver alleged only one type of discrimination at the agency level but then added more in his civil complaint. The EEOC form submitted on July 11, 2022, exclusively

---

[6] We do not know whether Dr. Tolliver filed with the Philadelphia Commission on Human Rights, but that requirement is waivable, and defendants did not raise it.

alleged "discrimination and harassment . . . based on sexual orientation." DI 10-1 at 1-2. And the supplement filed by Dr. Tolliver's counsel on November 11, 2022, described the charge as "sex orientation and gender discrimination through severe and pervasive sexual harassment and retaliation." 10-2 at 1. All the underlying factual allegations are exclusively tied to that charge. *E.g.*, DI 10-1 at 1 ("The circumstances of discrimination and harassment are based on my sexual orientation.); DI 10-2 at 4 ("Charging Party has been subjected to severe and pervasive discrimination and harassment in the workplace due to his sex and gender."). But in his civil complaint, Dr. Tolliver also alleges race, color, and national origin discrimination. We see nothing in the administrative record that would have put the agencies on notice of those claims. The motion to dismiss discusses this issue at length, and Dr. Tolliver's opposition does not respond. Considering the above, we dismiss Dr. Tolliver's PHRA and PFPO claims of race, color, and national origin for failure to exhaust.

> **B.   Dr. Tolliver fails to state a claim for sexual-orientation discrimination, retaliation, or aiding & abetting under the PHRA and PFPO.**
>
> **1. *Discrimination***

To state a claim of sexual-orientation discrimination, Dr. Tolliver must adequately allege that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) that the circumstances of the adverse employment action give rise to an inference of unlawful discrimination. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

Defendants dispute that the amended complaint alleged an adverse employment action and an inference of unlawful discrimination. DI 10 at 17. An adverse employment action is one which is "serious and tangible enough to alter an employee's compensation, terms, conditions, or

6

privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). The injury need not be "significant" but must "concern the terms or conditions of . . . employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 358 (2024). Dr. Tolliver alleges that he was removed from his office and forced to work in a hallway, DI 8 ¶ 95-96, his duties were limited, *id.* ¶ 104, he was not allowed to attend an important meeting, *id.* ¶ 103, he was subjected to disciplinary action, *id.* ¶ 117, and he was reassigned from a permanent position to a temporary position, affecting his job stability, *id.* ¶ 85. We find that these factual allegations concern the terms of Dr. Tolliver's employment with SDP, *Muldrow*, 601 U.S. at 358, and, together, may be serious and tangible, *Cardenas*, 269 F.3d at 263.

Next, we ask whether the circumstances of the adverse employment action "give rise to an inference of unlawful discrimination." *Jones*, 198 F.3d at 411. The central focus of this inquiry is "whether the employer is treating some people less favorably than others because of their . . . sex." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (internal quotations omitted). While allegations of "precise . . . disparate treatment" are not required, a plaintiff must allege "some causal nexus between his membership in a protected class" and the adverse employment action. *Id.*

We find that Dr. Tolliver's amended complaint does not allege facts sufficient to allow an inference of discrimination. Dr. Tolliver predominantly makes conclusory allegations that he faced discrimination "due to . . . sexual orientation." *E.g.*, DI 8 ¶ 25, 87. A plaintiff's "own assertion" of discrimination, without more, is not enough for an inference of discrimination. *Sarullo*, 352 F.3d at 798 (finding no prima facie case when evidence was primarily plaintiff's claim that "he was not rehired because he is Native American," even though he had been called

"derogatory nicknames referencing his Native American heritage"). The closest "causal nexus" we can surmise is that Dr. Tolliver's negative treatment began once he began working with Dr. Brown, *see e.g.*, DI 8 ¶¶ 88-107, and that Dr. Tolliver was "singled out and treated differently than similarly situated coworkers," *id.* ¶ 116. But we do not know the characteristics of those other employees, or any other context from which we could infer unlawful discrimination. Accordingly, we find that Dr. Tolliver has failed to plead sexual-orientation discrimination under the PHRA and PFPO.

### 2. Retaliation

To establish a retaliation case, an employee must plead "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). An adverse employment action means that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 341 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)).

We find that the amended complaint does not adequately allege retaliation — that is, an adverse employment action causally connected to protected activity. Dr. Tolliver's two key allegations — that he was removed from an "Eligibility List," DI 8 ¶ 43, and that he was reassigned from being an Assistant Principal at Thomas Jefferson to a temp at Roxborough, *id.* ¶ 85 — pre-date defendants' receipt of the EEOC charge, *id.* ¶ 15.[7] And even other broadly

---

[7] See *supra* footnote 4 for discussion of the EEOC charge date and inconsistencies in the

alleged conduct such as Dr. Tolliver being subjected "to an abusive work environment due to his race and sexual orientation and as part of a campaign of retaliation" ended after June 2022. *Id.* ¶ 87. Dr. Tolliver may be suggesting he faced retaliation for the discrimination reports he made in "February 2022, and again in May 2022," *id.* ¶ 122, but the amended complaint includes no facts about those reports, so we cannot assess if they constituted protected activity and if they are causally related to the alleged adverse employment actions. If Dr. Tolliver wants to base his retaliation claim on something other than the EEOC charge, he needs to allege facts from which a plausible inference of retaliation can be made.

### 3. Aiding and Abetting

Because we dismiss all underlying violations of the PHRA, we also dismiss Dr. Tolliver's claim of aiding and abetting. *See Eldeeb v. Alliedbarton Sec. Servs. LLC.*, No. 07-669, 2008 WL 4083540, at *11 (E.D. Pa. Aug. 28, 2008) (finding defendant "cannot be liable for aiding and abetting any allegedly discriminatory practices" when primary defendant granted summary judgment on "plaintiff's claims of unlawful discrimination and retaliation in violation of the PHRA"), *aff'd*, 393 Fed. App'x 877 (3d Cir. 2010); *Kanyangarara v. Step by Step, Inc.*, No. 22-2264, 2023 WL 6321769, at *8 (E.D. Pa. Sept. 28, 2023) (collecting cases for proposition that "courts in this [d]istrict dismiss or grant summary judgment on aiding and abetting claims under § 955(e) [of the PHRA] when no underlying discrimination claim survives").

**C.      Dr. Tolliver fails to state a claim for § 1981 sexual-orientation discrimination, race discrimination, retaliation, or hostile work environment.**

### 1. Discrimination

Dr. Tolliver alleges violations of § 1981 for race and sexual-orientation discrimination.

---

amended complaint.

9

DI 8 at 17-19.  In this context, § 1981 only protects against racial discrimination.  *Anjelino v. New York Times Co.*, 200 F.3d 73, 97-98 (3d Cir. 1999).  Therefore, we dismiss the sexual-orientation-based § 1981 claims.

"To establish a discrimination claim under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotations omitted). Defendants do not dispute that Dr. Tolliver alleges the first and third requirements but argue that he failed to allege discriminatory intent.  DI 10 at 23.

We identify two non-conclusory allegations: (1) that Dr. Tolliver was not able to apply for jobs while "non-black individuals who were not even employees of the school district were treated better than [him] and given preferential treatment over [him]," DI 8 ¶¶ 44-46, and (2) that "[o]ther non-black non protected employees who did not even have a position to begin with were given preferential treatment over [him]," *id.* ¶ 84.[8]  While these allegations state that non-black individuals were treated better than black individuals, DI 8 ¶¶ 44-46, 84, they do not establish discriminatory intent.

Dr. Tolliver cites *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 350 (3d Cir. 1990) for the

---

[8] One argument raised in the response to the motion to dismiss appears entirely unrelated to this case.  "Defendant did not advise Plaintiff of any full-time Spanish Teacher openings when they changed her teaching contract from full-time to part-time.  In fact, Defendant hired two younger Hispanic women to work as full-time Spanish Teachers immediately after changing Ms. Goodman from full-time to part-time.  Additionally, Defendant retaliated against Ms. Goodman after she filed a Complaint with the PHRC complaining of the foregoing discriminatory treatment.  Defendant retaliated by increasing her classroom observations, giving her a Needs Improvement performance evaluation and placing her on a Performance Improvement Plan (PIP)."  DI 14 at 4-5.

proposition that "[w]here an employer fails to notify its own African American employee of a vacancy and instead goes outside of the company to hire a worker outside its employee's protected class, a qualified African American employee has a prima facie case of discriminatory hiring based on race." DI 14 at 5. But the decision actually holds "the fact that [plaintiffs] were required to undergo a burdensome application process while white applicants were being hired for apparently unskilled jobs through word-of-mouth in an all white workforce is sufficient to establish a prima facie case." *Metal Serv.*, 892 F.2d at 351. The allegations here are materially different — Dr. Tolliver does not allege an all-white workforce or less skilled individuals being hired through secretive tactics.

In *Castleberry*, plaintiffs established a prima facie case by alleging that "they were the only black males assigned to their specific site, they were assigned undesirable duties, they were the targets of racial epithets, and they were fired twice due to their race." *Id.* at 266. While Dr. Tolliver alleges that his job prospects were limited due to his race, his allegations do not demonstrate that the treatment was unique to black individuals or that he faced "racial epithets" like the plaintiffs in *Castleberry*. And in *Qing Qin v. Vertex*, 100 F.4th 458, 474 (3d Cir. 2024), it was enough for the plaintiff — the only Chinese employee — to point to equally skilled and tenured comparators being promoted over him. Dr. Tolliver does not, alleging only that non-black employees — without reference to skill or tenure — were given opportunities that he was not.[9] Accordingly, we find Dr. Tolliver failed to state a claim for racial discrimination under

---

[9] In opposition to the motion to dismiss, Dr. Tolliver argues that "[o]ther non-black employees with less experience were not displaced." DI 14 at 5. He cites to paragraphs 27 and 84 of his amended complaint. *Id.* Neither of these paragraphs reference the non-black employees as having less experience. DI 8 ¶¶ 27, 84. Paragraph 84 merely states that the non-black employees "did not even have a position to begin with." *Id.* ¶ 84. We do not know how

§ 1981.

### 2. *Retaliation*

"To establish a retaliation claim in violation of § 1981, a plaintiff must establish the following: (1) [he] engaged in [protected] activity . . .; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Castleberry*, 863 F.3d at 267 (internal quotations omitted). And Dr. Tolliver "must have acted under a good faith, reasonable belief that a violation [of § 1981] existed." *Id.* The only protected activity we know about is the EEOC complaint reporting *sexual-orientation discrimination* (not race discrimination). *E.g.*, DI 8 ¶¶ 41, 78-79, 87, 129.[10] Because we find no factual allegations of protected activity under § 1981, and because Dr. Tolliver failed to allege a plausible underlying § 1981 violation, we dismiss his § 1981 retaliation claim.

### 3. *Hostile Work Environment*

A hostile work environment claim under § 1981 requires that "1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or

---

that fact is relevant to the candidates' experience. Dr. Tolliver may not add allegations, such as that his comparators had less experience, in opposition to a motion to dismiss. *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

[10] Dr. Tolliver's complaint vaguely mentions reports to human resources. *See e.g.*, DI 8 ¶ 41. But we know nothing about those reports. And he makes other conclusory allegations about the same, such as "[p]laintiff was intentionally assigned this status in retaliation for Plaintiff complaining about his disparaging treatment based on his race and sexual orientation." *Id.* ¶ 29. We do not know about any complaints other than the sexual orientation charge raised to the EEOC. If Dr. Tolliver engaged in protected activity related to the alleged race discrimination, he needs to plead those facts.

pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]." *Castleberry*, 863 F.3d at 263. After disregarding conclusory allegations, the facts supporting Dr. Tolliver's hostile work environment claims are:[11]

- In November 2021, shortly after Dr. Butler started working with Dr. Tolliver, Dr. Tolliver was removed from his office space, required to work in the hallway, prevented from attending an important meeting, had his job duties limited, was assigned a new lunch period, was subjected to discipline, and was treated differently than other employees. DI 8 ¶¶ 88-118.
- In May 2022, Dr. Tolliver was reassigned from his position as Assistant Principal at Thomas Jefferson to a temporary position at Roxborough. *Id.* ¶ 85.
- In July 2022, Dr. Tolliver was removed from an eligibility list, *id.* ¶ 43, inhibiting his ability to be considered for open jobs at the district.

Dr. Tolliver's hostile work environment claim is unsustainable as pled. Most importantly, he fails to plead intentional discrimination. One way a plaintiff may establish intentional discrimination is through facts that "overtly implicate racial animus." *Davis v. City of Newark*, 285 Fed. App'x 899, 902 (3d Cir. 2008). Dr. Tolliver does not include any such allegations. Another way to plead intentional discrimination is "by way of comparators, specifically, by alleging that similarly situated persons who are not members of [plaintiff's] protected class were treated more favorably." *Williams v. Aramark Campus LLC*, No. 18-5374,

---

[11] We do not know how the allegations about the suspension of students fit into Dr. Tolliver's case.

2020 WL 1182564, at *5 (E.D. Pa. Mar. 12, 2020) (internal quotations omitted).  Dr. Tolliver appears to take this approach but does so unsuccessfully.

One flaw in the amended complaint's reference to comparators is insufficient information about their identities.  *See e.g.*, DI 8 ¶¶ 59, 116.  For example, Dr. Tolliver alleges that he "was singled out and treated differently than similarly situated coworkers."  *Id.* ¶ 116.  For all we know, those "similarly situated coworkers" were from the same protected classes as Dr. Tolliver.  Nor do we know whether they are similarly situated.  For example, Dr. Tolliver alleges that "non-black individuals who were not even employees of the school district were treated better than [him] and given preferential treatment over [him]."  *Id.* ¶ 46.  Those individuals may have been more qualified than Dr. Tolliver and therefore not "similarly situated."  As the Third Circuit has explained, a plaintiff "cannot sustain a claim simply by asserting an event and then asserting that it was motivated by racial bias."  *Davis*, 285 Fed. App'x at 903.  Because of these flaws, Dr. Tolliver fails to allege intentional discrimination and his hostile work environment claim must be dismissed.[12]

---

[12] We also see problems with the second and fourth requirements.  The frequency and severity of the conduct is likely insufficient to establish a hostile work environment claim.  "Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Castleberry*, 863 F.3d at 264 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).  "[I]solated incidents (unless extremely serious) will not [do]."  *Id.*

The Third Circuit has affirmed summary judgment for an employer in instances with significantly more egregious facts.  In *Nitkin v. Main Line Health*, the Third Circuit affirmed a finding of no hostile work environment despite seven instances where a supervisor made sexually inappropriate comments to an employee leading to the employee locking herself in a bathroom out of fear for her personal safety.  67 F.4th at 567-73.  And in *Ali v. Woodbridge Twp. Sch. Dist.*, the Third Circuit affirmed a finding of no hostile work environment when a supervisor greeted an employee with offensive, racially insensitive remarks, in part because the comments

### IV. Conclusion

In sum, we grant defendants' motion to dismiss in full. Dr. Tolliver's PHRA and PFPO claims based on race, color, and national origin are dismissed for failure to exhaust. His sexual-orientation discrimination and retaliation claims under the PHRA and PFPO are dismissed for failure to state a claim upon which relief may be granted. Considering the dismissal of the PHRA claims, Dr. Tolliver's PHRA aiding and abetting claim is also dismissed. Finally, Dr. Tolliver's § 1981 claims are dismissed for failure to state a claim upon which relief may be granted. Dr. Tolliver has 14 days to amend his complaint.

---

were not "so pervasive that they altered the working environment," even when made during meetings that occurred immediately prior to the employee's termination. 957 F.3d 174, 179, 182 (3d Cir. 2020).