**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARMANDO TOLLIVER** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO.  24-4140** |
| | **:** | |
| **THE SCHOOL DISTRICT OF** | **:** | |
| **PHILADELPHIA, DR. JANICE** | **:** | |
| **BUTLER, DR. JOHNATHAN BROWN,** | **:** | |
| **DR. EVELYN NUNEZ** | **:** | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                                          **July 20, 2026**

Anyone who has ever had a job knows how it feels when things aren't going the way you

wish they would.  And perhaps that feeling may come along with suspicions about supervisors'

or coworkers' motivations.  But suspicions alone cannot sustain an employment discrimination

action.  That is the case here.  In the fall of 2021, Dr. Armando Tolliver was an assistant

principal at Edison High School.  Experiencing friction with his management, Dr. Tolliver began

to suspect that the reason for his unpleasant interactions, relegation to a hallway workstation, and

exclusion from meetings was his sexual orientation.  He sued the school district and

administrators for employment discrimination and retaliation.  But the record lacks support for

Dr. Tolliver's suspicions, and a reasonable jury needs more.  So, we must grant the school

district's motion for summary judgment in its entirety.

### I.      <u>Factual Background</u>

The School District of Philadelphia hired Armando Tolliver, a bisexual man, as a teacher

in 2010.  DI 36-1 at ¶¶ 1, 7.  Some time between 2013 and 2014, Dr. Tolliver applied to become

a principal, and by 2018, was promoted from teacher to Assistant Principal at Edison High

School.  *Id.* at ¶¶ 2-3.  From the time of his promotion to 2021, Dr. Janis Butler was his

immediate supervisor.  *Id.* at ¶ 4.  Dr. Jonathan Brown, the Assistant Superintendent, was Dr.

Butler's supervisor.  *Id.* at ¶ 5.  And Dr. Evelyn Nunez was the school district's Chief of Schools,

and later its Chief Academic Officer.  *Id.* at ¶ 6.

Around October 2021, Dr. Tolliver began interacting with Dr. Brown in the workplace.

DI 36-4 at 141:23-143:2.[1]  Within a month, Dr. Tolliver began to feel that Dr. Brown was

discriminating against him on the basis of his sexuality.  *Id.* at 143: 3-17.  Dr. Tolliver's feeling

was based on the way Dr. Brown spoke to him, the remarks he would make, and the requests that

he would make — remarks and requests he purportedly would not make to any of the other

assistant principals at Edison.[2]  *Id.*  As an example, Dr. Tolliver testified that on one occasion,

Dr. Brown "requested of [Dr. Tolliver] to do something related to the budget," which was "not

something that assistant principals even have access to."  *Id.* at 145:10-13.  When Dr. Tolliver

questioned whether he was able to access budget-related information in his role as an assistant

principal, Dr. Brown "responded negatively," and said he would "get someone else to do it."  *Id.*

at 145:13-18.  On another occasion, Dr. Tolliver reached out to Dr. Brown regarding the school

district's mask mandate when a student refused to wear a mask, to which Dr. Brown responded

in a "derogatory" email on which he copied some of Dr. Tolliver's colleagues and suggested that

Dr. Tolliver was "incapable of completing" his job.  *Id.* at 145:19-146:8.

That fall, Dr. Butler and Dr. Brown allegedly assigned Dr. Tolliver to work from the

---

[1] Neither Dr. Tolliver nor the school district provides a clear, chronological account of the events here, so we glean many of the facts recounted here from Dr. Tolliver's deposition transcript.  DI 36-4.

[2] Dr. Tolliver was unable to identify specific statements made by Dr. Brown during his deposition.  DI 36-4 at 144:11-145:8; 149:11-13.

second-floor hallway of Edison High, and directed him to suspend students for being in the hallway.[3]  DI 36-1 at ¶¶ 16; DI 36-4 at 215:3-5, 242:6-20.  Dr. Tolliver testified that "no other administrator was directed to work out of a hallway without an office," and that "when [he] stated in December that [he] was not going to continue working out of the hallway, [he] was reprimanded and told that that is an administrative directive[.]"  DI 36-4 at 155:1-16, 169:6-17.  And amid a student report that a teacher "put hands on a girl student," Dr. Brown purportedly requested that Dr. Tolliver "submit all of the witness statements or something to that effect," though Dr. Tolliver testified that the request was about something he was not involved in.  DI 33-2 at 29; DI 36-4 at 136:16-137:17.  In reality, according to Dr. Tolliver, another administrator — Mr. Adam Frary — had made the report.  DI 36-4 at 158:3-8.

Dr. Tolliver also testified that he was "excluded from meetings, not given the information [he] needed to complete [his] job," and received a written reprimand.  *Id.* at 171:1-172:25.  In December of 2021, Dr. Tolliver tried to inform Dr. Nunez — who allegedly played a role in Dr. Tolliver's ability to advance in the principal pool — that he felt he was being discriminated against, but Dr. Nunez told Dr. Tolliver that she did not have time to meet.  DI 36-4 at 120:17-25, 200:18-20.  Later, in January of 2022, Dr. Tolliver informed Dr. Butler that Dr. Brown was "targeting" him, though he did not inform Dr. Butler of the grounds on which he believed he was being targeted.  *Id.* at 130:6-131:4.  During his time at Edison High, other than former principal Awilda Ortiz, Dr. Tolliver never explicitly informed any of his colleagues at Edison High that he is bisexual.  DI 36-4 at 118:19-23.  Neither Dr. Brown, Dr. Butler, nor Dr. Nunez ever made any direct comments to Dr. Tolliver about his sexual orientation.  DI 36-4 at 145:4-8, 164:15-18,

---

[3] Dr. Tolliver testified at his deposition that he was not given a reason for being assigned to work in the hallway. DI 36-1 at ¶ 16.

168:7-11; DI 36-1 at ¶¶ 10, 13.

Eventually, Dr. Tolliver requested and was granted a transfer out of Edison High in either January or February of 2022. *Id.* at ¶ 18; DI 36-4 at 190:17-19. In the spring of 2022, Dr. Tolliver was placed at Roxborough High School, but was in a "displaced" position, meaning that he was in a temporary role there. DI 36-1 at ¶ 47; DI 36-4 at 192:1-18.

## II.     Standard of Review

If adequately challenged on summary judgment, a plaintiff must be prepared to "point to concrete evidence in the record that supports each and every essential element of his case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (citation modified). And "[a]lthough we view all the facts in the light most favorable to a plaintiff opposing summary judgment and draw all reasonable inferences in that party's favor, a plaintiff who reaches the summary judgment stage may no longer rest upon the mere allegations or denials of his pleadings." *Id.* "Bare assertions, conclusory allegations, or suspicions" are similarly insufficient at this stage. *Id*. (citation modified). With this in mind, we will grant summary judgment if the school district shows that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III.     Discussion

Dr. Tolliver brings claims against all defendants — the school district, Dr. Butler, Dr. Brown, and Dr. Nunez — for discrimination based on his sexual orientation under the Pennsylvania Human Relations Act (PHRA) and Philadelphia Fair Practices Ordinance (PFPO), and retaliation under the PHRA and PFPO. DI 36-1 at ¶ 23. And he brings a claim for aiding and abetting under the PHRA against the individual defendants only. *Id*. None passes muster.

4

At base, the record is devoid of evidence that would permit a reasonable jury to find in Dr. Tolliver's favor on any of his discrimination and retaliation claims. And because his primary claims under the PHRA fail, so too does his aiding and abetting claim.

### A. Dr. Tolliver's sexual orientation discrimination claims are dismissed

A claim for sexual-orientation discrimination under the PHRA is analyzed under the commonly applied burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 92, 802-803 (1973).[4] Under that framework, Dr. Tolliver must first show "a *prima facie* case" of discrimination. *Xu Feng v. University of Delaware*, 785 F. App'x 54, 55 (3d Cir. 2019); *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022). If he can, then the school district must "give a 'legitimate, nondiscriminatory' reason for its actions." *Id.* The burden then shifts back to Dr. Tolliver to show that the reason offered by Dietz is pretextual. *Id.*

A prima facie case of sexual orientation discrimination requires Dr. Tolliver to show: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) there are circumstances supporting an inference of discrimination. *Fennell v. Comcast Cable Communications Management, LLC*, 628 F. Sup. 3d 554, 571 (E.D. Pa. 2022) (Baylson, J.) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)) (citation modified). The school district does not dispute that Dr. Tolliver is a member of a protected class or that he was qualified for his position as Assistant Principal. DI 33 at 10 n.4. Rather, the school district contends that Dr. Tolliver has not suffered an adverse employment

---

[4] The parties assume that we analyze Dr. Tolliver's PHRA and PFPO claims under the same framework as a sexual orientation discrimination claim brought under Title VII, so we will. *See Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 713 (E.D. Pa. 2021) (Beetlestone, J.) ("Claims brought under the PHRA and the PFPO are analyzed under the same legal framework as Title VII claims.").

action, and that even if he did, there is no evidence from which a jury could infer that the school

district discriminated against him on the basis of his sexual orientation.  We conclude that a

genuine dispute exists regarding whether Dr. Tolliver suffered an adverse employment action,

but agree with the school district that there is no evidence supporting an inference of

discrimination.

   1.  *Adverse employment action*

   To satisfy the requirement of an adverse employment action, a plaintiff must show that

they suffered some "'disadvantageous' change in an employment term or condition."  *Muldrow*

*v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024).  And while the change must be

"identifiable," it need not be "significant."  *Id.*; *Peifer v. Board of Probation and Parole*, 106

F.4th 270, 277 (3d Cir. 2024).  Accordingly, there is no meaningful distinction between, for

example, "transfers causing significant disadvantages and transfers causing not-so-significant

ones."[5]  *Muldrow*, 601 U.S. at 355.

   Dr. Tolliver says it is undisputed that he suffered "multiple" adverse employment actions,

including: (1) being assigned to work in the hallway; (2) becoming a displaced assistant principal

following his transfer out of Edison High; (3) being excluded from meetings; (4) being subjected

to disciplinary actions; and (5) limitations on his duties.  DI 36 at 7.  While the evidentiary

support for each of the alleged adverse employment actions suffered by Mr. Tolliver is thin,

there is a genuine dispute of material fact regarding his assignment to work in the second-floor

hallway at Edison High.  According to the affidavit of Dr. Butler, "at no time did [she] or anyone

---

[5] There is, however, a meaningful distinction between a voluntary transfer requested by the plaintiff (as here), and an involuntary one.  Accordingly, we do not consider Dr. Tolliver's "displaced" position following his transfer to be an adverse employment action, because he repeatedly requested it.  DI 36-1 at ¶ 18.

else order that [Dr. Tolliver] was required to sit at or work from a desk in the hallway of the second floor." DI 37-1 at ECF No. 62. But by Dr. Tolliver's account, that is precisely what he was directed to do by Dr. Butler and Dr. Brown, and he faced disciplinary action if he chose not to obey those directions. DI 36-4 at 155:1-16, 169:6-17. If true, forcing *only* Mr. Butler to work out of a hallway — while not the most "significant" harm — could be an adverse employment action. *Muldrow*, 601 U.S. at 355.

### 2. *Circumstances supporting an inference of discrimination*

While Dr. Tolliver might be able to show that he suffered an adverse employment action, the record before us still does not raise the specter of discrimination based on his sexual orientation. An inference of intentional discrimination may be established "in a number of ways," including evidence of similar discrimination against other employees, more favorable treatment of a similarly situated employee outside the class, or statements by a supervisor indicating discriminatory animus. *Fennell*, 628 F. Supp. 3d at 572 (citing *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010)) (citation modified). However, isolated examples, without more, do not suffice. *See Lynn v. Bank of New York Mellon*, -- F.4th --, 2026 WL 1945752, at *3 (3d Cir. 20206) (precedential) ("[J]ust as being replaced by someone outside the plaintiff's protected class is not necessary to raise an inference of discriminatory animus, it is also not sufficient on its own to do so.").

Dr. Tolliver argues that an inference of sexual-orientation discrimination can be drawn from how Dr. Sidney Jenkins and Mr. Frary, two heterosexual male assistant principals, "were never subjected to any of the serious and tangible mistreatment and hostility, such as

displacement from employment and/or being forced to sit in the hallway."[6] DI 36 at 8. Even assuming that Dr. Tolliver was in fact the only assistant principal required to work from the hallway at Edison High, though, there is nothing in the record to suggest that assignment was made because of Dr. Tolliver's sexual orientation. *See Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) (noting that "evidence of differential treatment of a single member of the non-protected class is insufficient to give rise to an inference of discrimination.") (citation modified). This is particularly true where, by Dr. Tolliver's own admission, he never explicitly informed any of his colleagues at Edison High that he is bisexual. DI 36-4 at 118:19-23.

When asked at his deposition whether Dr. Brown ever made any comments about Dr. Tolliver's sexuality, Dr. Tolliver responded: "He didn't have to. To question my ability to do my job was enough." DI 36-4 at 149:1-25. Certainly, most cases do not involve direct evidence of discrimination in the form of explicit comments about one's protected characteristics. But the circumstances must still support a reasonable inference of discrimination, and friction between a plaintiff and his supervisor will not do. *Nitkin*, 67 F.4th at 571 (observing that "bare assertions, conclusory allegations, or suspicions" are insufficient at summary judgment). While possibly disadvantageous or unpleasant, asking an assistant principal to work from a hallway to observe student transitions between classes does not alone yield a fair inference of discrimination. DI 37-1 at ECF No. 61-62; DI 36-4 at 23:3-4 (Dr. Tolliver testifying "I believe that every student that is in front of me each day is my child."). We do not think Dr. Tolliver adduced evidence sufficient for a reasonable jury to see discrimination here.

---

[6] The sexuality of Dr. Jenkins and Mr. Frary is an "assumption" by Dr. Tolliver. DI 36-4 at 233:20-234:1-2

3. *The school district offers a legitimate, nondiscriminatory reason for its actions*

Assuming, contrary to our conclusion above, that Dr. Tolliver could make a prima facie case of sexual orientation discrimination, the school district offers a legitimate, nondiscriminatory reason for Dr. Tolliver's assignment to the second-floor hallway at Edison High. An employer's burden at this stage is "relatively light[] and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426. Dr. Butler's affidavit explains that after she began at Edison she "determined that there were significant behavioral issues at the school impacting the health and welfare of students and School District employees." DI 37-1 at ECF No. 61. The "most effective" way to handle those issues, according to Dr. Butler, was to assign administrative staff to each of Edison High's three floors, of which the second floor was "particularly problematic," requiring assignment of both Dr. Tolliver and Mr. Frary. *Id.* The school district therefore meets its burden at step two of *McDonnell Douglas*.

4. *Dr. Tolliver cannot show pretext*

At the pretext stage, Dr. Tolliver "cannot simply show that the [school district's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Dr. Tolliver must do one of two things: he may (1) "present sufficient evidence to meaningfully throw into question, i.e., to cast substantial doubt upon" the school district's reasons for terminating him "by painting them as weak, implausible, contradictory, or incoherent," or (2) "come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was

9

a motivating or determinative cause of" the adverse employment action, for example by showing that the school district "had subjected him to unlawful discriminatory treatment . . . treated other similarly situated persons not of his protected class more favorably, or . . . discriminated against other" bisexual or homosexual employees. *Id.*

Dr. Tolliver says that the school district has offered no legitimate, nondiscriminatory reason for placing him in the hallway and that his evidence "creates a slam dunk with respect to pretext." DI 36 at 11. We disagree. To attempt to show pretext, Dr. Tolliver relies on the same evidence as he did at the prima facie stage. Yes, in some cases, evidence supporting a plaintiff's prima facie case may also be useful at the pretext stage. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017). But not here. As explained above, Dr. Tolliver's displaced status was a result of the transfer that he specifically and repeatedly requested, not the decision of the school district. DI 36-1 at ¶ 18; DI 36-4 at 190:13-194:18. And the fact Dr. Tolliver may have been made to work out of the second-floor hallway unlike Dr. Jenkins and Mr. Frary does not alone suggest that the school district's reason for assigning him to the second floor was pretextual. *Simpson v. Kay Jewlers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998) (An inference of discrimination based on cherry-picked comparator evidence "may be acceptable at the prima facie stage of the analysis" because there "the inquiry is based on a few generalized factors." That is "not necessarily" the case "at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity."). Because Dr. Tolliver does not offer any evidence casting doubt on the school district's legitimate, non-discriminatory reason, we grant summary judgment on Dr. Tolliver's sexual orientation discrimination claims under the PHRA and PFPO (Counts I and IV).

**B. Dr. Tolliver's retaliation claims are dismissed**

Dr. Tolliver's retaliation claims will be dismissed for similar reasons.  Because retaliation claims, like discrimination claims, are analyzed under the *McDonnell Douglas* framework, we begin with the prima facie elements of retaliation.  *Daniels v. School Dist. Of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).  A prima facie claim for retaliation requires Dr. Tolliver to show: "(1) that [he] engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.*  A plaintiff can offer a "broad array" of evidence to satisfy the third element, including "evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive." *Day v. New Jersey Dep't of Corr.*, 2025 WL 3206676, at *3 (3d Cir. Nov. 17, 2025) (quoting *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017)) (citation modified).

Dr. Tolliver's argument in support of his retaliation claim is cursory.  He argues:

> Dr. Tolliver's established a long list of continuous protected activities he engaged in prior to Defendants adverse employment actions, from November 2021 to July 2022.. This list includes the sexual discrimination complaints he made February 9, 2022, and again in May 2022; as well as other protected activities he engaged in before his EEOC charge. Each of these activities was known by his supervisors and resulted in their retaliation. Thus, Dr. Tolliver has sufficiently established a causal nexus between his protected activities and Defendants discriminatory actions. Thus, he has sufficiently established retaliation under the PHRA and PFPO. Accordingly, Plaintiff's claims must go forward.

DI 36 at 1.  This paragraph does not include record citation, makes vague reference to "adverse employment actions," and does not identify what the alleged retaliation was.[7]  Nonetheless, we

---

[7] We note that while the outcome we reach is based on a thorough review of the record before us, Dr. Tolliver's minimalist briefing impeded our review.  *McCann v. Kennedy Univ.*

11

assume that Dr. Tolliver's allegedly protected actions were his complaints about the perceived discrimination regarding his sexual orientation, and the adverse actions taken by the school district are the same as those relied on to support his discrimination claims.

Dr. Tolliver did not make a formal complaint about his perceived discrimination until February of 2022, but he testified that he informed staff at Edison High — including his roster chair, science department lead, and assistant principals — that he believed he was being discriminated against on the basis of his sexuality in November of 2021.[8]  DI 36-4 at 120:17-121:20.  In the fall of 2021, Dr. Butler and Dr. Brown directed Dr. Tolliver to work on the second-floor of Edison High, and was directed to suspend students for being in the hallway.  DI 36-1 at ¶¶ 16; DI 36-4 at 215:3-5, 242:6-20.  As explained above, singling out an employee to work in the hallway, while relatively insignificant, could constitute an adverse employment action.  *See* section III.A.1, *supra*.  And in his deposition testimony, Dr. Tolliver seemed to imply that he was assigned to work in the hallway as a measure of retaliation.  DI 36-4 at 147:22-24 ("I was then directed to go upstairs and work out of a hallway out of a student desk as if to be, like, on display, like how dare you.").

This record does not support Dr. Tolliver's retaliation claims.  First, a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of [his] protected conduct at the time they acted."

*Hosp., Inc.*, 596 F. App'x 140, 146 (3d Cir. 2014) ("District Courts are not required to search through the record for evidence to support a party's assertion of the existence of a genuine issue of material fact."); Fed. R. Civ. Pro. 56(c)(1)(3) ("The court need consider only the cited materials[.]"); *Estate of Egenious Coles v. Zucker, Goldberg, & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("Judges are not like pigs, hunting for truffles buried in the record.").

[8] The school district does not challenge that Dr. Tolliver engaged in protected activity but says that Dr. Tolliver did not do so until February of 2022.  DI 33 at 18; DI 37 at 8.

*Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196-97 (3d Cir. 2015).  Dr. Tolliver does not offer any such evidence that Dr. Brown or Dr. Butler — who allegedly assigned him to the second-floor hallway — were aware of his sexuality in the fall of 2021.[9]  DI 36-4 at 118:19-23, 215:3-5, 242:6-20.  Nonetheless, at his deposition, Dr. Tolliver repeatedly testified "I don't have to tell anyone anything" with regard to his sexuality.  *Id.* at 116:3-8.  We disagree.  In the absence of any evidence, a reasonable jury could not credit Dr. Tolliver's speculation about Dr. Brown and Dr. Butler's knowledge of his sexuality, particularly where both Dr. Brown and Dr. Butler averred that they did *not* know.[10]  DI 37-1 at ECF Nos. 57, 63.  And second, as we explained above, Dr. Tolliver's requested transfer out of Edison High is not an adverse employment action; it was an outcome he wanted.  We dismiss Dr. Tolliver's retaliation claims (Counts II and V) accordingly.

## C. Dr. Tolliver's aiding and abetting claim is dismissed

Dr. Tolliver's last remaining claim is for aiding and abetting under the PHRA against Drs. Butler, Brown, and Nunez.  The PHRA makes it unlawful "[f]or any person . . . to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice[.]"  42 P.S. § 955(e).  But, as several judges from this district have explained, an aiding and abetting claim cannot be sustained absent an underlying, valid claim under the PHRA.  *Alsharqi v. Main Line Health, Inc.*, 2025 WL 2804421, at *10 (E.D. Pa. Oct. 1, 2025) (Wolson, J.); *Washington v. Se. Pa. Transportation Auth.*, 2021 WL 2649146, at *32

---

[9] Dr. Tolliver contends that he informed Dr. Butler he believed he was being discriminated against on the basis of his sexuality in a group meeting in January of 2022, which was after his assignment to work in the hallway.  DI 36-1 at ¶ 8.

[10] At his deposition, Dr. Tolliver also testified that he did not know himself whether Drs. Butler, Brown, or Nunez identified him as bisexual.  DI 36-4 at 109:16-25.

13

(E.D. Pa. June 28, 2021) (Slomsky, J.); *Lombard v. Lassip, Inc.*, 2017 WL 6367956, at \*5 (E.D. Pa. Dec. 13, 2017) (Goldberg, J.); *Dickinson v. Millersvill Univ. of Pa.*, 2014 WL 1327610, at \*5 (E.D. Pa. April 2, 2014) (Sanchez, J.). The language of the PHRA supports this conclusion: absent an "act declared by [the PHRA] to be an unlawful discriminatory practice," there is nothing to aid and abet. 42 P.S. § 955(e). As such, we dismiss Dr. Tolliver's claim for aiding and abetting under the PHRA for the same reasons we dismiss his discrimination and retaliation claims.

## IV.    Conclusion

On this record, a trial is not warranted. We grant the school district's motion for summary judgment in its entirety, and this case may be closed.